UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL SHELTON,

    Plaintiff,

v.   Case No: 6:17-cv-615-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying his claim for disability insurance benefits under the Act. Upon review, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

On September 12, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability commencing on June 24, 2010, due to "broken spine, compressed disks, arthritis, mental" (Tr. 192-93, 212). His claim was denied initially and on reconsideration (Tr. 143-150,104), and he requested and received a hearing before an administrative law judge ("ALJ") (Tr. 38-66). On February 8, 2016, the ALJ found Plaintiff not disabled and issued his unfavorable decision (Tr. 10-37). The Appeals Council denied

---

[1] The information in this section comes from the parties' joint memorandum (Doc. 20).

Plaintiff's request for review (Tr. 1-8), making the ALJ's February 2016 decision the final decision of the Commissioner. Plaintiff brings this action after exhausting his available administrative remedies. This dispute has been fully briefed, and was referred to me for a report and recommendation.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process appearing at 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

In this case, the ALJ performed the required sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 15). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of spinal radiculitis, T6-8 compression deformity, degeneration of the left knee and mood disorder (20 CFR 404.1520(c)) (Tr. 21). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1 (Tr. 15-17). Next, the ALJ decided that Plaintiff had the residual functional capacity to perform

> light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps/stairs, but never climb ladders, ropes or scaffolds. He can occasionally crouch. The claimant needs to avoid extreme cold/humidity. He needs to avoid unprotected heights or dangerous machinery. The claimant requires a sit/stand option for 30 minutes every 30 minutes. He is limited to simple repetitive 1-3 step tasks with occasional changes in the work setting.

(Tr. 17).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 29).[2] Based on the testimony of a vocational expert, the ALJ concluded at step five that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (Tr. 30-31). As a result, the ALJ found that Plaintiff was not under a disability at any time from his June 24, 2010 alleged onset date, through December 31, 2015, his date last insured (Tr. 31).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011)

---

[2] On the date last insured, Plaintiff was forty-six years old, with a high school education and past relevant work as a hand sprayer (heavy/semiskilled) (Tr. 30, 41, 43 and 63).

(citation omitted). When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the ALJ committed reversible error by failing to properly weigh and consider the opinions of treating psychiatrist Earl Taitt, M.D., and by improperly relying on the testimony of the vocational expert.

### Evaluation of Dr. Taitt's Opinions

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the

evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinions, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).[3] Good cause for disregarding the opinion of a treating physician can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).[4]

---

[3] On January 18, 2017, the Commissioner published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules became effective as of March 27, 2017; therefore, they do not apply to the ALJ's decision in this case. The cited regulations govern this case.

[4] By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c) (2); Crawford, 363 F.3d at 1161. Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

Plaintiff treated with psychiatrist Earl Taitt, M.D., beginning well prior to the alleged onset of disability. Plaintiff claims that the ALJ failed to weigh all of Dr. Taitt's opinions and failed to support the ALJ's findings regarding the portions of Dr. Taitt's opinions that were weighed. On close review, I see no basis for reversal. In the administrative decision, the ALJ summarized, in detail, Dr. Taitt's notes and opinions (Tr. 20-22, 25). As stated by the ALJ:

> The claimant was treated at Valencia Psychiatry since at least 2006. He reported he was stable. The mental status showed his mood euthymic. His attention, concentration and memory were good. His thought content was appropriate. He was to continue his medications. In February 2011, the mental status showed he was irritable. His attention was good. Concentration and memory were fair. He was preoccupied and rambling. The claimant returned in March 2011. The mental status showed his affect full. His attention was good. Concentration and memory were poor (Exhibit 2F/10-43).
>
> The claimant returned to Valencia Psychiatry in January 2013 after an extensive gap in treatment. He was off all his medications. The claimant appeared withdrawn. His attention was good and concentration and memory were poor. In February 2013, he reported improvement since taking his medications. The mental status showed his mood euthymic. He was to continue his medications. In March 2013, the claimant was hostile. He appeared agitated. He was preoccupied and his speech was pressured and rambling. The claimant reported on June 7, 2013, that his symptoms were worse. He had mood swings. The mental status showed his speech pressured and rambling. His thought processes were abnormal. The claimant returned in October 2013. The mental status showed he was easily distracted and his memory was poor. He was started on Remeron (Exhibit 2F).
>
> * * *
>
> Dr. Taitt from Valencia Psychiatry completed a treating source mental status report on November 19, 2013. Dr. Taitt indicated the claimant's mood and affect was dysphoric, anxious, irritable, mood swings and reactive. The claimant's thought process was confused. His thought content was normal. The claimant had poor concentration and was easily distracted. The claimant had poor immediate, recent and remote

> memory. Observations included that the claimant limped, was stiff and wore splints in his back and neck. The diagnosis was mood disorder due to polyarthritis with mixed features. His prognosis was poor. Dr. Taitt further opined that the claimant was competent to manage his own funds independently. Dr. Taitt opined that the claimant was not capable of sustaining work activity for eight hours a day, five days a week. He had trouble starting and finishing simple self-care and household tasks (Exhibit 4F).
>
> The claimant returned to Dr. Taitt at Valencia Psychiatry on January 28, 2014. He reported he was irritable and had mood swings. The mental status showed he was hyperactive. He was cooperative with average intellectual functioning. The claimant's mood was dysthymic, depressed, anxious, agitated and angry. The claimant's attention was good. Concentration and memory were poor. The diagnosis was mood disorder (Exhibit 5F).
>
> \*\*\*
>
> In a questionnaire on February 24, 2014, Dr. Taitt indicated the claimant's mood and affect were depressed, irritable, with mood swings and anxiety. His thought process was inefficient. His concentration was poor and he was easily distracted. Dr. Taitt indicated that the claimant's memory was forgetful of facts and events. Behavioral observations included that he limped and was in pain. He had splints in his back. He had trouble standing, sitting and walking. The diagnosis was mood disorder due to polyarthritis with mixed features. His prognosis was poor. The claimant was competent to manage his funds. Dr. Taitt opined that the claimant was not capable of sustaining work activity for eight hours a day, five days a week because of psychological symptoms that were too severe to allow transportation to work. He was unable to complete simple tasks (Exhibit 7F).

(Tr. 20-22).

> The claimant returned to Dr. Taitt on March 21, 2014 with complaints of mood swings. The mental status examination showed he had poor eye contact. His mood was depressed and anxious. His attention was good. Concentration and memory were poor. Progress notes in April 2015 showed his thought process preoccupied. His attention was good. Concentration and memory were poor. In June 2015, the claimant's thought process was preoccupied. His attention was good. Concentration and memory were poor. The mental

> status in August 2015 showed his mood depressed, anxious, agitated and angry. His motor behavior was normal. There was no evidence of psychosis. His attention, concentration and memory were good. (Exhibits 15F and 18F)).

(Tr. 25).

In rejecting Dr. Taitt's conclusions regarding disabling limitations, the ALJ stated:

> Dr. Taitt opined that the claimant could not sustain work activity due to his mood disorder from polyarthritis. Dr. Taitt is a psychiatrist and not an expert in orthopedic medicine and his opinion regarding the claimant's physical limitations are accorded little weight.

(Tr. 28). Plaintiff correctly argues that this is not an adequate reason to discount Dr. Taitt's opinions regarding Plaintiff's *mental* health. Dr. Taitt opined that Plaintiff had a mood disorder. While his treatment notes and opinions mention "polyarthritis" and other physical complaints, he was clearly treating Plaintiff solely for mental health issues. Because Dr. Taitt's opinions do not purport to be based on physical limitations, this stated rationale is not substantial evidence to discredit them. This was not, however, the only reason identified by the ALJ as a basis for discounting Dr. Taitt's opinions.

The ALJ discussed and credited the opinions of two state agency psychologists and contrasted their opinions of much milder limitations with those of Dr. Taitt (Tr. 28). The ALJ noted that Dr. Taitt's conclusions were inconsistent with his own treatment notes (Tr. 28-29).[5] The ALJ also observed that a statement that a claimant is unable to work is not a medical opinion, but an opinion on issues reserved for the Commissioner and can never be entitled to controlling weight (Tr. 29). Finally, the ALJ found that Plaintiff's "own

---

[5] "Dr. Taitt indicated on a few occasions that the claimant was not capable of sustaining work activity for eight hours a day, five days a week and was unable to complete simple tasks (Exhibits 4F and 7F). Yet, Dr. Taitt indicated on both of these occasions that the claimant was capable of significant mental activity, including managing his own funds, which is in contradiction to his opinion regarding ability to work." (Tr. 28-29).

- 8 -

activities of daily living do not support Dr. Taitt's opinion." (Tr. 29).[6] Regardless of whether the Court agrees with the ALJ, all of these reasons are supported by the substantial evidence cited. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Phillips, 357 F.3d at 1240, n. 8. "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. (internal quotation and citation omitted).

Plaintiff argues that Dr. Taitt offered more opinions than just a conclusion that Plaintiff was unable to sustain work activity, and it is impossible to know how these opinions were factored into the ALJ's determination of Plaintiff's residual functional capacity because a majority of Dr. Taitt's handwritten treatment notes are illegible. Again, I am not persuaded. While the doctor's notes contain entries that are undecipherable, they also include checkboxes and other legible entries which were fully evaluated by the ALJ. The ALJ's detailed summary of Plaintiff's treating history with Dr. Taitt, which includes abnormal as well as normal findings, convinces me that nothing substantive was overlooked.[7]

The failure to specifically discuss every examination finding is not fatal error as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision is sufficient to enable the Court to conclude that

---

[6] The ALJ found that Plaintiff shops, goes to the movies, plays video games and watches television, socializes with family and close friends, is able to handle stress, and has no issues with authority figures (Tr. 16). The ALJ also determined: "The claimant is able to take care of his personal needs, prepare frozen meals and make a sandwich. He is able to drive and even rides his motorcycle. He is able to pay bills and use a checkbook. The claimant is able to use a computer. The claimant even indicated he could follow written and spoken instructions. Activities such as these do not support Dr. Taitt's opinion or the claimant's allegation of disabling impairments (Social Security Ruling 96-7p)." (Tr. 29). Plaintiff does not take issue with any of these findings.

[7] Plaintiff has not required inpatient psychiatric hospitalizations (Tr. 16), his testimony regarding his mental health allegations was thoroughly evaluated (Tr. 26), and Plaintiff does not identify any particular limitation that was not considered by the ALJ.

the ALJ properly considered the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation omitted). I find this to be the case. The ALJ thoroughly discussed Plaintiff's allegations of mental limitations and evaluated and discounted Dr. Taitt's opinion of disabling impairment. As the ALJ's ultimate conclusion – which includes limitations to simple repetitive 1-3 step tasks with occasional changes in the work setting - is well supported by the substantial evidence he cites, any error is harmless.

Vocational Expert Testimony

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Plaintiff acknowledges that the ALJ posed and relied on a hypothetical question containing the same limitations found by the ALJ in his residual functional capacity assessment (Tr. 63-64), but argues that "it is not clear whether this hypothetical accurately accounts for all the limitations of the claimant, as the ALJ did not properly weigh the opinions in the record." (Doc. 20 at 29-30). To the extent this is a continuation of Plaintiff's objection to the ALJ's evaluation of Dr. Taitt's opinions, it is unpersuasive for the reasons set forth above. Plaintiff has not identified any particular limitation that was not considered.

Plaintiff states that: "If the ALJ determines that a claimant has moderate limitation in maintaining concentration, persistence, and pace, the ALJ's hypothetical to the VE must include, or implicitly account for, this limitation." McInerney v. Comm'r of Soc. Sec., No. 2:15-cv-339-FtM-CM, 2016WL 4651372, at *6 (M.D. Fla. Sept. 7, 2016) (citing Winschel, 631 F.3d at 1180). Plaintiff argues that the ALJ's hypothetical question did not reflect the ALJ's finding that Plaintiff would have moderate limitations in concentration, persistence and

pace, and limiting a claimant to simple tasks "does not adequately account for significant limitations in pace as opposed to concentration." (Doc. 20 at 30).

As pointed out by the Commissioner, the ALJ made no finding that Plaintiff had significant limitations in pace as opposed to concentration. Rather, the ALJ determined that Plaintiff had moderate difficulties "with regard to concentration, persistence **or** pace." (Tr. 16 – emphasis added). As explained by the ALJ:

> Two state agency psychologists. Robert Hodes, Ph.D. (Exhibit 1A) and David Tessler, Psy.D. (Exhibit 3A) had the opportunity to review the clinical findings and other reports and opined that the claimant had mild restrictions of activities of daily living, mild difficulties with social functioning, **moderate difficulties with concentration, persistence or pace** and no evidence of repeated episodes of decompensation. **Specifically, the claimant was not significantly limited in his ability to understand, remember and carry out very short and simple instructions.**

(Tr. 28- emphasis added). In determining that Plaintiff could perform a wide range of unskilled work, the ALJ assigned "great weight to the state agency opinion that translates into vocational parameters that [Plaintiff] would be capable of simple repetitive 1-3 step tasks with occasional changes in the work setting." (Tr. 29).

To the extent Plaintiff argues that the ALJ's hypothetical question to the vocational expert was flawed in that it failed to explicitly provide for his moderate limitations in concentration, persistence *or* pace, this is similarly unpersuasive. The Eleventh Circuit has held that an ALJ's hypothetical question must take into account the ALJ's step two finding that a claimant has moderate limitations in maintaining concentration, persistence, and pace, unless the ALJ indicates that the medical evidence suggests that the claimant's ability to work is unaffected by the limitation or the ALJ's question implicitly accounts for the limitation. See Winschel, supra, 631 F.3d at 1180-81. Since Winschel, the Eleventh

Circuit has repeatedly recognized that a hypothetical question could sufficiently account for a moderate limitation in concentration, persistence or pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite concentration deficiencies. See Jarrett v. Comm'r, Soc. Sec. Admin., 422 F. App'x 869, 872 (11th Cir. 2011); Syed v. Comm'r, Soc. Sec. Admin., 441 F. App'x 632, 635 (11th Cir. 2011); Washington v. Comm'r, Soc. Sec. Admin., 503 F. App'x 881, 883 (11th Cir. 2013); Scott v. Comm'r, Soc. Sec. Admin., 495 F. App'x 27 (11th Cir. 2012); Jacobs v. Comm'r, Soc. Sec. Admin., 520 F. App'x 948, 951 (11th Cir. 2013) ("the ALJ found that the evidence demonstrated that Jacobs retained a limited ability to work despite his depression and associated moderate difficulties in maintaining his concentration, persistence, or pace, and substantial evidence supports this finding. The ALJ's hypothetical questions to the vocational expert fully accounted for Jacobs's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment."); Timmons v. Comm'r, Soc. Sec. Admin., 522 F. App'x 897, 907 (11th Cir. 2013) ("An ALJ's hypothetical question restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration, persistence, and pace."); Hurst v. Comm'r, Soc. Sec. Admin., 522 F. App'x 522, 525 (11th Cir. 2013) ("Finally, because the medical evidence showed that Hurst was capable of completing simple tasks and the ALJ's hypothetical to the VE specified that the individual was capable of simple, routine, repetitive tasks, the hypothetical 'sufficiently accounts' for Hurst's moderate limitation in maintaining concentration, persistence, and pace."); Lee v. Comm'r, Soc. Sec. Admin.,

551 F. App'x 539, 540-41 (11th Cir. 2014) (ALJ's limitation to simple work accounted for claimant's mental limitations).

Here, the ALJ made a specific finding that the evidence referenced and credited by the ALJ "translates into vocational parameters that [Plaintiff] would be capable of simple repetitive 1-3 step tasks with occasional changes in the work setting." The medical and other evidence cited by the ALJ demonstrates that, even with some difficulties in concentration, persistence or pace, Plaintiff is able to perform work within the RFC assessment. Therefore, the ALJ's inclusion of a limitation to "simple, repetitive 1-3 step tasks with occasional changes in the work setting" in his hypothetical question to the Vocational Expert fully accounted for the limitations in concentration, persistence or pace, and is consistent with Winschel. Proper legal standards were applied.

## Recommendation

As the Commissioner's administrative decision comports with proper legal standards and is supported by substantial evidence, I respectfully recommend that it be **AFFIRMED**, and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on February 22, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record